Filed 4/12/16  P. v. Madison CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B259994 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA420757) |
| v. | |
| ANTHONY MADISON, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mildred Escobedo, Judge.  Affirmed.

Lenore De Vita, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Steven E. Mercer and Gary A. Lieberman, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted defendant Anthony Madison of assault with a deadly weapon, a machete (Pen. Code, § 245, subd. (a)(1)). The trial court sentenced him to the low term of two years in state prison. Defendant appeals from the judgment of conviction, raising ten main issues and numerous sub-issues. We conclude that the trial court erred in one evidentiary ruling and in one aspect of its jury instruction on evidence of a prior assault committed by defendant. However, neither error requires reversal, and defendant's remaining claims are not persuasive. Therefore, we affirm the judgment.

## BACKGROUND

On the morning of December 21, 2013, Juan Alonso was working as a gardener, using a gasoline-powered trimmer to cut hedges at a client's house on 6th Avenue in Los Angeles. Also present were his brother and two sons. As Alonso was working, defendant exited the house next door and walked toward Alonso, holding a machete. He yelled, "Mother fucker, stupid," and "Get out of here, you mother fuckers." As he approached, he kicked over some trash cans.

According to Alonso, defendant's demeanor was "aggressive" and "mad." He waved the machete side to side about chest high in front of Alonso's face. Alonso told defendant to calm down and stepped back toward his truck two or three times. Defendant continued to approach and waved the machete in the direction of Alonso's body. Alonso testified that he kept backing up because he was afraid and thought defendant "was going to hit me with [the machete]. I don't know, maybe." He believed that if defendant "kept walking towards me, he would have [been able to strike me with the machete] because I kept walking backwards, and he would take a step forward." The closest defendant came to Alonso was about 5 to10 feet, too far away to have reached him. Alonso stopped beside his

2

truck. Defendant stopped about 15 feet away, standing on his property near the neighbor's bushes which Alonso had been trimming, and appeared to calm down.

Alonso's 23-year-old son Eric observed defendant swing the machete after he knocked over the trash cans. Defendant was perhaps 12 feet from Alonso, and swung the machete "[m]aybe one or two times." From where defendant was standing, he could not have reached Alonso.

Eric's two 911 calls were played for the jury. In the first call, Eric stated, "I'm trying to make a report because some guy [unintelligible] just wal–, like tried to assault us. . . . [H]e came out with a machete right now." The 911 operator asked, "[D]id he try to hurt you?" Eric replied, "Nah, he just . . . went inside [unintelligible] back his house." The operator asked, "[D]id he actually threaten you or was he just . . . trying to [unintelligible]?" Eric said, "No he . . . came towards us, you know, and [unintelligible] you know, swing that."

In the second call, Eric told the operator he had made "a report because the guy keeps coming out and trying to swing a machete at us." He explained that "the minute we try to walk over there, he . . . wants to come towards us, you know?" The operator asked if he tried to "physically come at you and hit you?" Eric replied, "Yeah! He's . . . trying to, he's trying to physically come at us, you know." Eric said that "the problem is he just came out of the house and like crazy, he started knocking over the trash cans" and "he comes toward us right now, you know? 'Ah you motherfuckers! This and that, whoot whoot."

When the police arrived, defendant was standing on his front porch, holding the machete.

The prosecutor presented evidence of a prior incident, which occurred about eight months earlier. Alonso testified that he was working at the same house when defendant exited the neighboring house and walked up to him. Defendant cursed

3

at Alonso, and struck him with a wooden stick.  Alonso was able to take the stick away, but defendant then struck him with his fist and grabbed his neck.  Alonso repeatedly asked defendant to let him go, and eventually defendant did.  He returned to his house and Alonso did not call the police.

## DISCUSSION

I.  *Revocation of Pro. Per. Status*

Defendant contends that the trial court erred in revoking his pro. per. status.  We disagree.

Defendant was granted pro. per. status on October 10, 2014, and standby counsel was appointed.  Among the advisements given to him orally by the court and in writing in the waiver form he executed was that he was not to act disrespectfully to the court, and that his pro. per. status could be revoked for serious misconduct or for obstruction of the trial.

Nonetheless, at the next hearing on October 27, 2014, two days before jury selection began, defendant obstructed the proceeding by repeatedly refusing to take his seat as directed by the bailiff and ordered by the court:

"THE COURT:  And for the record, Mr. Merritt is standby counsel.  He's the gentleman seated in the back row with glasses on his head.

"Mr. Madison, please listen to the bailiff, sir.

"Mr. Madison, as I've told you, if you do not comply with the court's directions, the pro. per. status will be taken away.  The bailiff told you to have a seat.  Have a seat, sir.  Sir, have a seat.

"THE DEFENDANT:  Why do I need to have a seat?

"THE BAILIFF:  Sit down.  Sit down.  Sit down.

4

"THE COURT:  Mr. Madison, if you wish to remain pro. per., you must comply with the instructions of the bailiff.

"THE DEFENDANT:  It's due process here.

"THE COURT:  You're just making an issue out of nothing.  Defendants are seated in the courtroom.  You're being treated like everybody else.  Have a seat.

"THE DEFENDANT:  You're violating my due process.

"THE COURT:  Mr. Madison, are you ready to proceed at this time, or are you going to listen to my directions or the bailiff's directions?

"THE DEFENDANT:  I want to file an appeal.

"THE COURT:  File an appeal.  Are you going to listen to the bailiff's directions or am I going to –

"THE DEFENDANT:  Am I being held in contempt?

"THE COURT:  Mr. Madison, would you like – is that what you're trying to do?  Because it seems to me you are trying to get me to hold you in contempt.  And I'm not going to hold you in contempt at this time.  What I'm going to do is if you don't comply with the reasonable directions of the bailiff, I'm going to take away your pro. per. status.  The bailiff told you to sit down.  That is how everybody is treated in the courtroom.  Have a seat at this time, or you'll be taken out of the courtroom and your pro. per. status will be taken away, which is not what you want.  So just have a seat.  Comply with the directions of the –

"THE DEFENDANT:  This is a violation of my due process.

"THE COURT:  If you start arguing with me, if you continue to argue with me, that will demonstrate to the court that you do not understand how to act appropriately in the courtroom, and I will take away your pro. per. status.  Don't argue.

"THE DEFENDANT:  I want to file an appeal.

"THE COURT:  – which is to sit down.

5

"THE DEFENDANT: I want to file an appeal.

"THE COURT: Sit down, sir.

"THE DEFENDANT: I want to file an appeal.

"THE COURT: It appears to the court that Mr. Madison does not understand what the proceedings are, wishes to appeal from my order to have a seat. The bailiff has given Mr. Madison reasonable directions, which is to be seated, which is a safety issue. The defendant is being treated like all other defendants. It appears that he cannot – he will not comply with the court's order to have a seat and the bailiff's directions to have a set and the court's order to comply with the bailiff.

"Mr. Madison – I've asked Mr. Madison multiple times. This interlude has taken four minutes, five minutes. Mr. Madison refuses to have a seat. Okay, his pro. per. status is taken away."

Based on defendant's disruptive behavior, the court did not abuse its discretion in terminating defendant's pro. per. status. "[T]he right of self-representation is not absolute. '[The] government's interest in ensuring the integrity and efficiency of the trial at times outweighs the defendant's interest in acting as his own lawyer.' [Citation.] 'The right of self-representation is not a license to abuse the dignity of the courtroom. Neither is it a license not to comply with relevant rules of procedural and substantive law.' [Citations.] 'Thus, a trial court must undertake the task of deciding whether a defendant is and will remain so disruptive, obstreperous, disobedient, disrespectful or obstructionist in his or her actions or words as to preclude the exercise of the right to self-representation. The trial court possesses much discretion when it comes to terminating a defendant's right to self-representation and the exercise of that discretion "will not

6

be disturbed in the absence of a strong showing of clear abuse.'" [Citation.]" (*People v. Williams* (2013) 58 Cal.4th 197, 253.)

Here, defendant's repeated refusal to take his seat as directed by the bailiff and ordered by the court – a measure, as the court stated, intended to ensure courtroom safety –demonstrated in stark terms that defendant would likely remain disruptive at trial. The incident occurred two days before jury selection commenced. Defendant was warned that his conduct might result in his pro. per. privileges being terminated, but persisted nonetheless. In light of his persistence, no reasonable alternative sanction (such as contempt) was likely to obtain defendant's compliance, and imposing physical restraints to keep him seated during trial entailed a risk of violence, given that he repeatedly refused verbal orders to be seated. In short, the court did not abuse its discretion in terminating defendant's self-representation. (See *People v. Carson* (2005) 35 Cal.4th 1, 10 [suggesting factors to be considered in deciding whether to revoke pro. per. status].)

II.   *Evidence of the Prior Stick Incident*

Defendant contends that the trial court erred in admitting evidence of the prior incident in which he struck Alonso with a stick, because "[t]he prosecutor's offer of proof was far too generic for the trial court to have concluded the uncharged conduct was significantly similar to the charged offense and therefore admissible to prove [defendant had] the same intent in both circumstances." We disagree. Regardless of the general nature of the offer of proof, the evidence introduced at trial was clearly admissible on the issue of defendant's mental state in the charged assault, motive, and common plan or scheme. Therefore, we find no error.

7

A. *Relevant Proceedings*

Before trial, the prosecutor moved to introduce evidence of the prior incident involving defendant's use of a stick. However, in contrast to Alonso's testimony at trial, in the prosecutor's pretrial version, defendant merely swung the stick in the direction of Alonso and others present; he did not strike Alonso.

Thus, the prosecutor told the court that the facts of the charged and prior incidents were "almost identical with the exception of the weapon selection." In the charged incident, defendant "came out with a machete, approached the next door neighbors' gardeners [at least three of whom were also present in the prior incident] and swung the machete in their direction. He had previously done the same thing with a stick." As the prosecutor described the prior incident, "I don't think the conduct arose quite to the level of actually having a victim of an assault."

The prosecutor argued that the prior incident was admissible under Evidence Code section 1101, subdivision (b) on the issues of identity, willfulness, and intent. Defense counsel objected to the evidence.[1] He noted that identity was not in issue, and that the prior incident was simply propensity evidence. The trial court was persuaded that "[B]ased on what I just heard and the information I've received on the case, it appears that the witnesses and/or the victim [in the charged incident involving the machete] are the same as they were in the previous incident [involving the stick] . . . , and it will come out in one of the 911 transcripts. The court finds that it is appropriate. It is relevant. The court is inclined to permit it."

Thereafter, defense counsel's opening statement made clear that the primary defense theory regarding the charged crime was that defendant's mental state in

---

[1]     Undesignated section references are to the Evidence Code.

8

waving the machete in Alonso's direction was insufficient to prove an assault. Thus, defense counsel stated the evidence would show that after defendant came out of his house with a machete and kicked over some trash cans, Alonso "approached him, holding a large hedge trimmer in an effort to try to calm [defendant] down in his erratic behavior, that [defendant] swung the machete that he was holding, but you will also hear that Mr. Alonso was not close to being hit by this machete, and in fact was not very close at all when the machete was swung." He further stated that for an assault with a deadly weapon to occur, "the action that is taken, in this case the swinging of the machete, has to be to apply force to another person directly like striking someone with a machete, or the evidence has to show that that was the probable result . . . , and the evidence that you are going to hear is going to show you that there was no probable result that anyone was going to be struck by the machete."

In his testimony at trial, Alonso described the prior incident quite differently from the prosecutor's offer of proof. He stated that as he was working on the neighboring house, defendant came out of his house, walked up to Alonso cursing, and struck him with a stick. Alonso walked toward defendant and was able to grab the stick and throw it away, but defendant then began striking him with his fist and grabbed his neck. After Alonso repeatedly asked, defendant let him go.

B. *Analysis*

Although the trial court admitted evidence of the stick incident based on the prosecutor's general (and, as it turned out, inaccurate) offer of proof, Alonso's actual testimony describing the incident was clearly admissible.

As a general rule, section 1101, subdivision (a), prohibits the admission of evidence of uncharged misconduct to prove propensity or disposition to commit

9

the charged crime.  (§ 1101, subd. (a); see *People v. Ewoldt* (1994) 7 Cal.4th 380, 393 (*Ewoldt*); *People v. Hendrix* (2013) 214 Cal.App.4th 216, 238 (*Hendrix*).) However, section 1101, subdivision (b), provides that such evidence is admissible "when relevant for a noncharacter purpose—that is, when it is relevant to prove some fact other than the defendant's criminal disposition, such as 'motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake [of fact] or accident.' [Citations.]" (*Hendrix, supra*, 214 Cal.App.4th at p. 238.) "[T]he admissibility of uncharged crimes depends upon three factors:  (1) the materiality of the facts sought to be proved; (2) the tendency of the uncharged crimes to prove or disprove the material fact (i.e., probative value); and (3) the existence of any rule or policy requiring the exclusion of relevant evidence (i.e., prejudicial effect or other § 352 concern).  [Citations.]" (*Ibid.*)

Assault with a deadly weapon is a general intent crime.  "[A]ssault does not require a specific intent to cause injury or a subjective awareness of the risk that an injury might occur.  Rather, assault only requires an intentional act and actual knowledge of those facts sufficient to establish that the act by its nature will probably and directly result in the application of physical force against another." (*People v. Williams* (2001) 26 Cal.4th 779, 790 (*Williams*).)

Here, as explained in defense counsel's opening statement, the defense theory was that the evidence of the charged incident with the machete failed to show that defendant had the mental state required for assault with a deadly weapon.  Defense counsel told the jury, in substance, that defendant's conduct was not intended "to apply force to another person directly like striking someone with a machete," and did not show that an application of force "was the probable result" of defendant's conduct.

10

This theory put directly in issue whether defendant had the mental state required for assault when he swung the machete in Alonso's direction, whether he had a motive to commit the crime, and whether he engaged in a common plan or scheme in both incidents. On these issues, Alonso's testimony about the stick incident was clearly admissible.

"'Where a defendant is charged with a violent crime and has or had a previous relationship with a victim, prior assaults upon the same victim, when offered on disputed issues, e.g., identity, intent, motive, etcetera, are admissible based solely upon the consideration of identical perpetrator and victim without resort to a "distinctive modus operandi" analysis of other factors.'" (*People v. Guilford* (2014) 228 Cal.App.4th 651, 661-662, quoting *People v. Zack* (1986) 184 Cal.App.3d 409, 415 (*Zack*); see *People v. San Nicolas* (2004) 34 Cal.4th 614, 668 ["'Evidence tending to establish prior quarrels between a defendant and decedent [or victim] and the making of threats by the former is properly admitted . . . to show the motive and state of mind of the defendant.'"].)

Here, in the prior incident, under circumstances similar to the charged crime only eight months later, defendant came out of his house while Alonso was working next door, struck him with a stick, then struck him with his fist after Alonso took the stick away, and then grabbed him by the neck. That testimony describing defendant's prior assault on Alonso was admissible to show that when defendant wielded the machete at Alonso in the charged assault, he had the same mental state as when he wielded the stick: the mental state of knowingly committing an act that by its nature would probably and directly result in the application of physical force against Alonso. (*Williams, supra,* 26 Cal.4th at p. 790.)

11

Further, from the evidence of the prior incident, the jury could infer that defendant's motive in the two incidents was the same: animosity (for whatever reason) toward Alonso when working as a gardener at the neighbor's house. Additionally, the jury could infer that in the charged incident, defendant acted in accordance with a common plan or scheme to attack Alonso. (See *Zack, supra,* 184 Cal.App.3d at p. 415; see also *Ewoldt, supra*, 7 Cal.4th at p. 403 [a common "plan need not be unusual or distinctive; it need only exist to support the inference that the defendant employed that plan in committing the charged offense"].)

Therefore, regardless of whether, as defendant contends, the prosecutor's pretrial offer of proof regarding the stick incident was too general for the court to make an informed decision, the evidence as introduced was admissible, and no actual error occurred.[2]

III. *Limiting Instruction*

At the close of the case, the court instructed the jury on the prior incident using a modified version of CALCRIM No. 375.[3] The instruction allowed the

---

[2] In related arguments, defendant contends that because the prosecutor's offer of proof regarding the stick incident varied considerably from Alonso's description of the incident in his testimony, the prosecutor committed misconduct in eliciting that testimony, defense counsel was ineffective by failing to object to that misconduct, and the trial court was delinquent in not striking the testimony. However, as we have stated, Alonso's actual testimony regarding the stick incident was properly admitted. Thus its introduction cannot give rise to any claim of prosecutorial misconduct, ineffective assistance of counsel, or error by the trial court.

[3] In relevant part, the instruction stated: "The People presented evidence of other behavior by the defendant that was not charged in this case, that the defendant charged others with a stick. [¶] . . . [¶] If you decide that the defendant committed the uncharged offense or act, you may, but are not required to, consider that evidence for the limited purpose of deciding whether or not: [¶] The defendant was the person who committed the offense alleged in this case; or [¶] . . . The defendant acted with the

jury to consider the incident on the issues of identity, general intent, motive, and common plan or scheme. Defendant contends that the evidence was admitted solely on the issue of intent. Therefore, to the extent the instruction allowed the jury to consider it for any other purpose, the instruction was erroneous.

However, as we have explained, the evidence of the stick incident was admissible on the issues of defendant's general intent, motive, and common plan or scheme. Thus, the instruction properly permitted the jury to consider the evidence for those purposes. However, we agree that because identity was not in issue, the instruction should not have informed the jury that it could consider the evidence to determine if "defendant was the person who committed the offense alleged in this case." However, because the defense conceded that defendant was the person who wielded the machete in the charged incident, it is not reasonably probable that in the absence of the error a different result would have been reached. (*People v. Watson* (1956) 46 Cal.2d 818, 836.)

IV. *911 Calls*

Over defense objection on the grounds of lack of personal knowledge and hearsay, the trial court admitted two statements in Eric's 911 calls that referred obliquely to the prior stick incident. Those statements were: (1) "this is the second time he does this too"; and (2) "this is the second time he does this to us,

_____

general intent required to prove the offense alleged in this case, . . . , or [¶] [T]he defendant had a plan or scheme to commit the offense alleged in this case. . . . [¶] In evaluating this evidence, consider the similarity or lack of similarity between the uncharged offense and act and the charged offense. [¶] . . . [¶] Do not conclude from this evidence that the defendant has a bad character or is disposed to commit crime. [¶] If you conclude that the defendant committed the uncharged offense or act, that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove that the defendant is guilty of PC 245A1, and that has been proved. The People must still prove the charge beyond a reasonable doubt."

13

you know?" It was undisputed that Eric did not witness the prior incident, and had simply been told about it by his father. Nonetheless, the trial court overruled the defense objection.

As respondent concedes, the court erred. Eric had no personal knowledge of the incident. His statements describing the charged incident as "the second time" necessarily conveyed information he was told by his father, and thus was inadmissible hearsay. However, in light of Alonso's testimony describing the prior incident, and Eric's testimony that he did not witness it, Eric's reference to charged incident as "the second time" was not prejudicial. (*People v. Watson, supra,* 46 Cal.2d at p. 836.)

Without analysis, defendant appears to contend that other statements to which he objected contained inadmissible hearsay. They did not, and defendant did not object to them on that ground in the trial court. Thus, any such claim is forfeited. (*People v. Partida* (2005) 37 Cal.4th 428, 433-434.) Nonetheless, to the extent defendant objected to the statements at trial, we discuss those objections.

At the beginning of Eric's second 911 call, the operator asked, "[H]ow can I help you?" Eric replied, "Yeah um make a report because the guy keeps coming out and trying to swing a machete at us." Defendant objected to this statement on the ground that it implied he had used a machete on more than one occasion. The trial court overruled the objection, and properly so. It was undisputed that defendant used a machete only in the charged incident. In the prior incident, which Eric did not witness, defendant used a stick. Hence, there was no danger that the jury would believe that defendant had used a machete more than once. Reasonably viewed in context, Eric was simply describing the charged incident in the heat of the moment. We find no error.

14

Defendant objected to two statements in which Eric described defendant's conduct in terms of what defendant "wanted" or "tried to do." In the first, Eric told the 911 operator: "[W]e're working here. So the minute we try to walk over there, . . . he wants to come towards us, you know?" In the second, he said: "He's trying to . . . physically come at us, you know? And we um you know, he wants to do something, but we don't know why? We don't even know the guy." Defendant argued that these statement were inadmissible opinion testimony as to his state of mind. However, "when the details observed [by a lay witness], even though recalled, are 'too complex or too subtle' for concrete description by the witness, he may state his general impression. [Citation.]" (*People v. Hurlic* (1971) 14 Cal.App.3d 122, 127.) Here, Eric's statements, made under the stress of a 911 call, conveyed his general impression of events that were otherwise difficult to describe at the time. We therefore find no abuse of discretion in the court's ruling.

The trial court ruled one exchange in the second 911 call inadmissible, thus requiring that the recording of the call be edited to be played for the jury. The prosecutor stated, "I am not sure technically I have the ability to do that with the level of accuracy I would need to ensure that the jury doesn't actually hear" the excluded portion. Thus, he explained he might not be able to play the recording of the call. After a further discussion, the court suggested that the prosecutor use a computer to edit the call, stopping the recording at the excluded exchange, forwarding past it, and then playing the remainder of the call. Apparently, that is what the prosecutor did when playing the second call for the jury.

On appeal, defendant contends that the court's editing suggestion demonstrated pro-prosecution bias and constituted judicial misconduct. Defense counsel did not object in the trial court; thus, the claim is forfeited. (*People v. Abel* (2012) 53 Cal.4th 891, 914.) In any event, the court's conduct was certainly not

15

misconduct. As the court stated, it was simply asking the prosecutor to edit the tape without "making this more complicated, more difficult than it is." "'The object of a trial is to ascertain the facts and apply thereto the appropriate rules of law, in order that justice within the law shall be truly administered.' [Citation.] To this end, 'the court has a duty to see that justice is done and to bring out facts relevant to the jury's determination.' [Citation.]" (*People v. Sturm* (2006) 37 Cal.4th 1218, 1237.) Far from engaging in misconduct, by suggesting how to edit the recording, the court properly complied with its duty to allow the jury hear evidence relevant to its consideration.

V. *Sufficiency of the Evidence*

Defendant contends that the evidence was insufficient to prove assault with a deadly weapon, in that it failed to prove that he used the machete in a way that would directly and probably result in the application of force to Alonso. We disagree. Of course, we view the entire record in the light most favorable to the judgment, and draw all reasonable inference in support. (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.)

"[I]t is a defendant's action enabling him to inflict a present injury that constitutes the actus reus of assault. There is no requirement that the injury would necessarily occur as the very next step in the sequence of events, or without any delay. The *McMakin* court [*People v. McMakin* (1857) 8 Cal. 547] noted that assault does not require a direct attempt at violence. (*McMakin, supra*, 8 Cal. at p. 548.) 'There need not be even a direct attempt at violence; but any indirect preparation towards it, under the circumstances mentioned, such as drawing a sword or bayonet, or even laying one's hand upon his sword, would be sufficient.' (*Hays v. The People* (N.Y. Sup.Ct. 1841) 1 Hill 351, 352–353, cited in *McMakin*,

16

at p. 548.) [¶] Subsequent California cases establish that when a defendant equips and positions himself to carry out a battery, he has the 'present ability' required by section 240 if he is capable of inflicting injury on the given occasion, even if some steps remain to be taken, and even if the victim or the surrounding circumstances thwart the infliction of injury." (*People v. Chance* (2008) 44 Cal.4th 1164, 1172.)

Here, according to Alonso, defendant approached him waving a machete, and Alonso retreated. In the prior incident, under similar circumstances, Alonso had approached defendant, and defendant struck Alonso with a stick. From this evidence, the jury could reasonably infer that defendant was capable of inflicting injury with the machete on Alonso, and that in waving the machete as he approached, he demonstrated the requisite general intent – knowingly committing an act that by its nature would probably and directly result in the application of physical force against Alonso. (*Williams, supra,* 26 Cal.4th at p. 790.) It was only because Alonso kept moving backwards as defendant approached that no force was actually applied. In short, the evidence was sufficient to prove that defendant assaulted Alonso with the machete.

VI.    *Instruction on Assault With A Deadly Weapon*

The trial court instructed the jury on assault with a deadly weapon using CALCRIM No. 875.[4] Defendant contends that CALCRIM No. 875 erroneously

---

[4]    The court instructed the jury as follows:
"The defendant is charged in Count 1 with assault with a deadly weapon other than a firearm in violation of Penal Code section 245A1.
"To prove that the defendant is guilty of this crime, the People must prove that:
"1. The defendant did an act with a deadly weapon other than a firearm that by its nature and would directly and probably result in the application of force to a person; and
"2. The defendant did that act willfully;

17

fails to inform the jury (either expressly or in similar terms) that assault (as defined in Pen. Code, § 240) requires an "attempt" to commit a "violent injury." As we understand the argument, it is that CALCRIM No. 875 erroneously translates the term "violent injury" as an "application of force," and fails to include the requirement of a specific intent.

The argument mischaracterizes the crime of assault. The term "'violent injury' . . . is not synonymous with 'bodily harm,' but includes any wrongful act committed by means of physical force against the person of another, even although only the feelings of such person are injured by the act." [Citation.]'" (*People v. Colantuono* (1994) 7 Cal.4th 206, 214, fn. 4.) Further, as we have noted, "assault does not require a specific intent to cause injury or a subjective awareness of the

---

"3. When the defendant acted, he was aware of facts that would lead a reasonable person to realize that his act by its nature would directly and probably result in the application of force to someone; and
"4. When the defendant acted, he had the present ability to apply force with a deadly weapon other than a firearm to a person.
"Someone commits an act willfully when he or she does it willingly or on purpose. It is not required that he or she intend to break the law, hurt someone else, or gain any advantage.
"The terms application of force and apply force mean to touch in a harmful or offensive manner. The slightest touching can be enough it if is done in a rude or angry way. Making contact with another person, including through his or her clothing, is enough. The touching does not have to cause pain or injury of any kind.
"The People are not required to prove that the defendant actually touched someone.
"The People are not required to prove that the defendant actually intended to use force against someone when he acted.
"No one needs to actually have been injured by defendant's act. But if someone was injured, you may consider that fact, along with all the other evidence, in deciding whether the defendant committed an assault.
"A deadly weapon other than a firearm is any object, instrument, or weapon that is inherently deadly or one that is used in such a way that it is capable of causing and likely to cause death or great bodily injury."

18

risk that an injury might occur.  Rather, assault only requires an intentional act and actual knowledge of those facts sufficient to establish that the act by its nature will probably and directly result in the application of physical force against another." (*Williams, supra,* 26 Cal.4th at p. 790.)  Thus, CALCRIM No. 875 is a proper statement of the law.[5]

VII.    *Prosecutorial Misconduct*

Defendant contends that several remarks by the prosecutor in closing argument constituted misconduct.  In the first remarks, the prosecutor argued defendant's conduct in the charged incident suggested that he hated the Alonso family for some unknown reason:  "Why does the defendant hate these people so much?  It is because of who they are or what they are doing or what they look like, we don't know, and we don't need to answer that question.  We do know he hates them.  That much is clear."  Defendant contends that the argument referred to facts not in evidence, i.e., that he hated the Alonso family.

Defendant failed to object to these comments and request a curative instruction.  Therefore, the claim is forfeited.  (*People v. Fuiava* (2012) 53 Cal.4th 622, 670-680.)  In any event, given the evidence of the prior and charged incidents against Alonso, the argument that defendant hated Alonso and his family for some reason was fair comment on the evidence.  (*People v. Ward* (2005) 36 Cal.4th 186, 215 [prosecutor has wide latitude to comment on the evidence in argument].)

In a similar vein, defendant contends that the prosecutor committed misconduct when he stated that the charged incident was "all part of this ongoing hatred of the Alonso family.  This is what he does, he hates them."  Defense

---

[5]    Because the instruction was correct, we do not address defendant's contention that his counsel was ineffective for failing to object to the instruction.

19

counsel objected to this comment, but the trial court overruled the objection, and properly so. As we have stated, the argument that defendant hated Alonso and his family was fair comment.

Defendant contends that the prosecutor committed misconduct in stating that (1) "you cannot advance on someone else whose [*sic*] going about their lives just trying to go to work . . . making whatever, $50.00 to cut somebody's lawn every Saturday," (2) by backing away Alonso did not "[give] up his right as a citizen to just go about his day" (3) Alonso had the right to work without fear of being killed or "cut them open" with a machete, and (4) the law did not require that "we . . . to wait . . . until someone is cut open and bleeding to acknowledge that this is a crime."

Defense counsel's objections to the comments were overruled, and we find no abuse of discretion in that ruling. Defendant contends that the prosecutor made up facts prejudicial to defendant's case – that Alonso was only "eking out a living" making $50, and was a citizen rather than in the country illegally. He also contends that the prosecutor's language was inflammatory. However, defendant makes far too much of these comments. The point of the remarks was not to get before the jury facts outside the evidence, but simply to argue that defendant's approaching Alonso with a machete constituted an assault, Alonso's backing away did not vitiate that assault, and the infliction of actual injury was not necessary. No reasonable juror would have understood otherwise.

Defendant also finds misconduct in another innocuous comment by the prosecutor: "[B]ut we don't say well because Juan ducked in time, it is not an assault, because Juan had to retreat in front of his kids . . . that . . . made it all okay." Defendant contends that the prosecutor misstated the evidence, because there was no evidence that Alonso ducked. However, defense counsel failed to

object, and thus any claim of misconduct is forfeited. (*People v. Fuiava, supra,* 53 Cal.4th at pp. 670-680.) In any event, at worst, the prosecutor misspoke in suggesting that Alonso had ducked. Immediately afterward, the prosecutor referred to the correct state of the evidence – that Alonso had retreated. The notion that the jury might be confused as to the actual state of the evidence is meritless.

Defendant contends that the prosecutor undermined the burden of proof by stating that "what happened is clear," and that therefore the jury did not need "any law" or "any instructions from the judge" to determine "who did it," that is, wielded the machete. The contention is forfeited based on defense counsel's failure to object (*People v. Fuiava, supra,* 53 Cal.4th at pp. 670-680), and regardless, we fail to see how this comment in any way undermined the burden of proof. As defendant concedes, the issue of identity was not disputed.

Defendant contends that the prosecutor also undermined the burden of proof by stating "[W]hat is the law? Is this a crime? First of all, we don't need a law to tell us that this conduct is a crime." Defense counsel's objection was overruled, but nonetheless the court told the jury that "counsel's argument is not evidence. The court's instructions and your recollection is going to determine your result." The prosecutor continued: "When you are released from the restrictions that are placed upon you about talking about this case . . . and you go tell them [family and friends] what happened, the evidence you heard, there is no one who is going to say that is not a crime." Defense counsel's objection was overruled, followed by the prosecutor's conclusion on the point: "The law is codified. It is written to acknowledge what we already know, that you can't do this, and it is in the instructions that the judge read you." The prosecutor then explained how the evidence proved that defendant committed an act with the machete that would by its nature directly and probably result in the application of force to a person.

21

We find no abuse of discretion in the trial court's overruling of defense counsel's objections. In context, and considering the court's admonition, no reasonable juror would have understood the prosecutor to be arguing that the jury need not refer to the court's instructions, and need not find each element of the crime proven beyond a reasonable doubt.

Finally, defendant contends that the prosecutor used a misleading example in explaining the required element of assault that defendant be aware of facts which would lead a reasonable person to know that his act would by its nature directly and probably result in the application of force. The example the prosecutor used was: "What does that mean? That means if I decided . . . to shoot a gun through the roof of my house, if I didn't know there was someone up there, I can't really be held responsible for that, but did he [defendant] know that the people facing him would believe that they were about to get hit with a machete? Of course he knew, that is exactly why he did it."

As we understand defendant's argument, it is that the prosecutor's remarks were misleading because: (1) the hypothetical conduct was criminal (and thus the prosecutor would have been "responsible" for it), and (2) the prosecutor implied that defendant was guilty simply because he knew people were present observing his conduct in waving the machete. The contention is forfeited by defense counsel's failure to object. (*People v. Fuiava, supra,* 53 Cal.4th at pp. 670-680.) Further, it is meritless. Although not artfully worded, the example was meant only to illustrate the notion that shooting a gun without knowledge of facts that would lead a reasonable person to know that someone might be struck is not an assault. The prosecutor was not suggesting the conduct was not criminal at all. Further, the point of arguing that defendant knew "the people facing him would believe that they were about to get hit with a machete" was simply to illustrate that unlike the

22

shooter in the example, defendant was aware of facts that would lead a reasonable person to believe that his act in approaching Alonso, waving a machete, would by its nature directly and probably result in the application of force against Alonso. In short, the prosecutor's comments, properly understood, were not improper.

VIII. *Sentencing*

Following the verdict, defendant requested to be sentenced immediately. The prosecutor recommended the midterm of three years, and defense counsel (after the court denied a request to reduce the offense to a misdemeanor) recommended probation. The court stated that it would consider probation, and was "having difficulty" in making its decision. After the prosecutor and defense counsel disagreed whether defendant had ever indicated a willingness to comply with a probationary condition of anger management, defense counsel proposed that the court ask defendant if he was willing to comply with the court's intended probationary terms, and "perhaps Mr. Madison will make up the court's mind."

In a colloquy with the court whether he would accept probationary conditions that included a mental health evaluation and anger management classes, defendant denied having any mental health or anger management issues, and stated that he did not see why he needed "to go to do any kind of anger management classes or mental health evaluation." The court then sentenced defendant to the low term of two years, citing as mitigating factors that he was a veteran, had no significant criminal history, and he had inflicted no injury.

Defendant contends that the court erred in inquiring whether he was willing to comply with conditions of probation requiring anger management and a mental health evaluation, because defendant's response was influenced by his mental

health problems.  He asserts that the court delegated its sentencing discretion to defendant.

We find no error.  "'A grant of probation is not a matter of right; it is an act of clemency designed to allow rehabilitation.  [Citations.]  It is also, in effect, a bargain made by the People, through the Legislature and the courts, with the convicted individual.'"  (*People v. Smith* (2014) 227 Cal.App.4th 717, 731.)  Rule 4.414(b)(3) of the California Rules of Court specifically permits the trial court to consider, in determining whether to grant probation, the defendant's "[w]illingness to comply with the terms of probation."  (See also Advisory Committee Comment to Rule 4.414 ["it is appropriate to consider the defendant's expressions of willingness to comply" with the terms of probation].)  Thus, it was not inappropriate for the court to consider whether defendant would agree to abide by the court's intended terms of probation, including a mental health evaluation and anger management classes.  That there was reason to believe defendant might have some undiagnosed mental condition which required treatment did not make it inappropriate for the court to consider whether, upon release to the community following a conviction of assaulting Alonso with a machete, defendant would be willing to have a mental health evaluation and to attend anger management classes to reduce his potential for future violence.

**DISPOSITION**

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


WILLHITE, J.


We concur:



EPSTEIN, P. J.



MANELLA, J.

25